IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY; AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA; TRANSPORTATION INSURANCE COMPANY; and NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, | ) ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| v. | ) ) | 06 C 5473 |
| STAFFING CONCEPTS, INC.; STAFFING CONCEPTS NATIONAL, INC.; STAFFING CONCEPTS INTERNATIONAL, INC.; SC OF FLORIDA II, INC.; VENTURE RESOURCES GROUP, LLC; ALTERNATIVE MARKETING GROUP, INC.; HUMAN CAPITAL SERVICES, INC.; PRODUCTIVE EMPLOYER CONCEPTS, INC.; HUMAN CAPITAL SOLUTIONS, INC.; and EPIC STAFF MANAGEMENT, INC., | ) ) ) ) ) ) ) ) ) ) ) | Judge Ronald A. Guzmán |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Continental Casualty Company; American Casualty Company of Reading, Pennsylvania; Transportation Insurance Company; and National Fire Insurance Company of Hartford (herein "the CNA insurers") sued defendants Staffing Concepts, Inc.; Staffing Concepts International, Inc.; SC of Florida II, Inc.; Venture Resources Group, LLC; Alternative Marketing Group, Inc.; Human Capital Services, Inc.; Productive Employer Concepts, Inc.; Human Capital Solutions, Inc.; and Epic Staff Management, Inc. (collectively "the SCI corporations") to recover more than $13 million due under insurance policy programs issued by the plaintiffs. The case is now before the Court on defendants' motion to dismiss for lack of personal jurisdiction and to

transfer venue. (Defs.' Mot. Dismiss & Mot. Transfer Venue ("Mot. Transfer").) For the reasons provided herein, the Court grants the motion to transfer venue.

## Facts

The CNA insurers have their principal places of business in Chicago, Illinois where they sell and provide property and casualty insurance to their clients. (Compl. ¶¶ 2-6.) The SCI corporations maintain their principal places of business in Florida and manage human resources, personnel responsibilities and employer risks for small to mid-size businesses. (*Id.* ¶¶ 8-14, 19.) One of the responsibilities that the SCI corporations assume for their clients is managing workers' compensation or other insurance claims. (*Id.*)

Plaintiffs issued insurance programs to defendants for four consecutive policy periods from 2000 to 2003. (*Id.* ¶ 26.) Plaintiffs and defendants entered into claims services agreements that obligated defendants to reimburse the CNA insurers for portions of the payments made on each claim. (*Id.* ¶ 27.) The parties also entered into finance agreements that provide the terms of reimbursement by SCI of losses within the deductibles. (*Id.* ¶¶ 53, 55-66.) The claims services and financial agreements between the parties were negotiated and signed in Florida or Georgia. (Defs.' Notice Filing Affs. Supp. Mot. Transfer, Ex. 1, Hardin Aff. ¶¶ 6, 7.)

The SCI corporations made workers' compensation claims against these insurance policies, and the CNA insurers issued payment regarding the claims presented. (Compl. ¶¶ 67-87.) However, the SCI corporations did not reimburse the CNA insurers for the deductibles. (*Id.*) The CNA insurers have sued the SCI corporations for breach of the finance agreements which amounted to monetary losses of $2.7 million in 2001, $9 million in 2002 and $1.8 million in 2003. (*Id.* ¶¶ 67-87.)

Each finance agreement provides that it will be construed and governed by Illinois law. (*Id.* ¶¶ 55-66.) For each year, there is a "master" insurance policy that provides workers' compensation coverage to the SCI corporations and their clients in over thirty states. (*Id*. ¶¶ 29, 36, 42.) Thus, coverage is scattered across the U.S. and the number of individual claims related to this case varies by state. The SCI corporations made premium payments to the CNA insurers' offices and bank accounts in Chicago, Illinois. (Pls.' Resp. 4; *id.* Ex. 6, 8, Sample CNA Invoices.) It is unclear where defendants' decision not to reimburse the CNA insurers for the deductibles occurred. (Pls.' Resp. 4.)

The SCI corporations argue that the CNA insurers mishandled claims and provided poor claims administration when they and their affiliates decided to exit the professional employer organization market and transfer claims to a special unit for "discontinued" business. (*Id.* 5; *id.,* Ex. 12, Dep. Charles Boornazian at 32-33; Mot. Transfer 4.) Plaintiffs aver that defendants' non-payment occurred in more than thirty states and at their ten regional offices. (Pls.' Resp. at 5; *id.* Ex. 13, CNA Designated Claim Handling Teams.) However, on the other hand, defendants have offered evidence that shows a majority of the workers' compensation claims, 2,263 of 4,400, were dealt with by CNA employees in a Florida office. (Mot. Transfer 9-10; *id.* Ex. E, Johns Aff. ¶¶ 6-8; *id.* Ex. A, Sullivan Aff. ¶¶ 15, 18; Pls.' Resp. 14; *id.* Ex. 55, SCI Workers' Compensation Claims List.)

The SCI corporations move to transfer venue to the Middle District of Florida pursuant to 28 U.S.C. § 1404(a). Six of the defendants have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2).

**Discussion**

I.      **Personal Jurisdiction**

To begin, it is not abundantly clear that the Court has personal jurisdiction over all of the defendants. Regardless of whether the plaintiff has successfully established a *prima facie* case of personal jurisdiction, the Court may address a petition to transfer under 28 U.S.C. § 1404(a). *Washington Nat'l Life Ins. Co. v. Calcasieu Parish Sch. Bd.,* No. 05 C 2551, 2006 WL 1215413, at *3 (N.D. Ill. May 2, 2006) (citing *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 466 (1962)). Hence, a finding of personal jurisdiction over the defendants "is not a prerequisite to transfer" under section 1404(a). *Id.*; *see Cote v. Wadel,* 796 F.2d 981, 985 (7th Cir. 1986) ("[U]nder 1404(a) as under 1406(a), the transferring court need not have personal jurisdiction over the defendants.").

The Court reserves its ruling on the motion to dismiss for lack of personal jurisdiction and addresses the motion to transfer venue. The issue before the Court is whether the Middle District of Florida, rather than the Northern District of Illinois, is significantly more convenient for the parties, the witnesses and the interests of justice.

II.     **Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Thus, a transfer is appropriate when "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *United Airlines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998); *see*

*Heller Fin., Inc. v. Midwhey Powder Co., Inc.,* 883 F.2d 1286, 1293 (7th Cir. 1989). The movant has the burden of showing, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). Courts are given broad discretion to transfer under section 1404(a), *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 264-65 (1981), and are called upon to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness," *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29-31 (1988) (quotation omitted). Thus, district courts look at each statutory factor on a case-by-case basis and utilize a broader set of considerations that turn upon the particular facts of the case. *Coffey*, 796 F.2d at 219.

The first two factors – convenience of parties and witnesses – are divided into numerous "private interest" factors. *Omnisource Corp. v. Sims Bros, Inc.,* No. 1:08-CV-89, 2008 WL 2756345, at *3 (N.D. Ind. July 14, 2008). In addition, the interests of justice are broken into a variety of "public interest" considerations. *Id.* at *4. The public interests are a separate analysis and may be determinative in a particular case, even if the parties and witnesses factors might call for a different result. *Coffey,* 796 F.2d at 220. Moreover, when weighing the various factors, courts are to consider and take into account all "claims and controversies properly joined in a proceeding." *In re Volkswagen AG*, 371 F.3d 201, 204 (5th Cir. 1954); *Aearo Co. v. Bacou-Dalloz USA Safety, Inc.,* No. 1:03-CV-01406-DFH-VS, 2004 WL 1629566, at *2-3 (S.D. Ind. July 21, 2004) (considering party's counterclaims and defenses for transfer of venue).

### A. Venue is Proper in the Transferor Court

Neither party argues that this venue is improper under 28 U.S.C. § 1391(a). There being no dispute as to this issue, the Court finds that venue is proper here.

### B. Venue is Proper in the Transferee Court

Pursuant to 28 U.S.C. § 1391(a), jurisdiction is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." Because Florida is where a substantial part of the business activity occurred that relates to the instant cause of action, venue is proper in the transferee court. (Mot. Transfer 9; *id.*, Ex. E, Johns Aff. ¶¶ 6-7.)

### C. Private Interests

To weigh the private interests in a motion to transfer, courts consider a number of factors, including: "(1) plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *See First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 911-12 (N.D. Ill. 2006).

#### 1. Plaintiffs' Choice of Forum

Deference is given to the plaintiff's choice of forum, and "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 663-64 (7th Cir. 2003) (quotation omitted). However, the choice is entitled less deference when the forum is not the site of material events causing the alleged breach. *See First Nat'l Bank,* 447 F. Supp. 2d at 912; *Pansophic Sys., Inc. v. Graphic Computer Serv., Inc.,* 736 F. Supp. 878, 880-81 (N.D. Ill. 1990). If another site has a stronger connection to the material events or relationship to the suit, less deference is awarded to plaintiff's choice of forum. *Chi., Rock Island & Pac. R.R. Co. v. Igoe,* 220 F.2d 299, 304 (7th Cir. 1955).

Thus, the weight that would be given to plaintiffs' choice of forum may be diminished by the case's significant connection with Florida. Hence, the Court will discuss the second factor – the situs of material events – before determining the weight to be afforded the CNA insurers' choice of forum.

### 2. Situs of Material Events

In a breach of contract case, the situs of material events is where the business decisions leading up to and causing the breach occurred. *Hyatt Corp. v. Personal Commc'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 14, 2004). Often, the situs of material events includes the location of performance or non-performance under the contract. *Hinc v. Lime-O-Sol Co.,* 231 F. Supp. 2d 795, 796 (N.D. Ill. 2002).

It is unclear where the decisions to withhold payments under the finance agreements were made. Defendants argue that the agreements were negotiated and signed in Florida or Georgia, and the final quotes were prepared in Florida. (Mot. Transfer 12; Defs.' Notice Filing Aff. Supp. Mot. Transfer, Ex. 1, Hardin Aff. ¶¶ 6-9.) They further note that their defenses and counterclaims are based on plaintiffs' mishandling of claims that occurred primarily in the Maitland, Florida office. (Mot. Transfer 13; Am. Answer ¶¶ 14-15, 41, 89-101.) It is alleged that over half of the claims at issue were handled and arose out of Florida and the remaining claims were handled and arose in various other states. (Mot. Transfer 10; *id.*, Ex. A, Sullivan Aff. ¶ 18; *id.*, Ex. E, Johns Aff. ¶ 8.)

Plaintiffs assert that the material events occurred in various states, including Illinois. (Pls.' Resp. 4-5.) Curiously, plaintiffs also assert that defendants made payments from their executive offices near Atlanta, where SCI's president as well as its chief financial officer

maintain an office. (Pls.' Resp. 4; *id.,* Ex. 6, Sample CNA Invoices; *id.*, Ex. 7, SCI Company Website Fact Sheet; *id.*, Ex. 13B, Johnson Aff. ¶¶ 5-6.) However, neither of these assertions persuades the Court to hold that Illinois is a more convenient venue for this action.

Plaintiffs further state that the billing and receipt of payments regarding the policies at issue occurred in Illinois. (Pls.' Resp. 4-5; *id.,* Exs. 6, 8, CNA Sample Invoices; *id.*, Exs. 9-11, 2000-2003 Master Policies.) However, billing and receipt of payments are not the material events in this suit. Rather, the material events are the decisions leading to the breach. *See generally First Nat'l Bank*, 447 F. Supp. 2d at 912 (describing location where business decisions were made regarding breach of a security agreement as situs of material events). Plaintiffs have neither established that Illinois is where those decisions were made nor refuted defendants' evidence that most of them were made in Florida.

In addition, while plaintiffs argue that decisions made in Chicago led to the mishandling of some of the claims and that the mishandling occurred in regional offices nationwide (Pls.' Resp. 5; *id.*, Ex. 12, Boornazian Dep. at 32-33), it does not refute defendants' evidence that the decisions regarding a majority of the claims mishandling occurred and arose out in plaintiffs' Florida office. (Pls.' Resp. 5; *id.*, Ex. 13, CNA Designated Claim Handling Teams; Mot. Transfer, Ex. A, Sullivan Aff. ¶ 4.)

Therefore, the location of the occurrences or omissions giving rise to the breach of contract, *i.e.*, the mishandling of claims, still remain fairly nebulous and geographically scattered. The record shows that most of the defendants' conduct that caused the breach of contract, as well as the CNA insurers' mishandling of claims, occurred outside of Illinois and was concentrated in Florida but also scattered amongst the regional offices. Thus, this factor weighs slightly in favor of transfer. Furthermore, because the evidence illustrates Illinois as

having a lesser connection and more minimal relationship to the suit as opposed to Florida and other venues, the plaintiffs' choice of forum is accorded less deference.

### 3. Sources of Proof

An assertion that most of the documentary evidence exists in one location, in and of itself, is insufficient to tip the balance in favor of transfer to that location. *Annett Holdings v. Certain Underwriters at Lloyds*, No. 08 C 1106, 2008 WL 2415299, at *2 (N.D. Ill. June 12, 2008); *see Stock v. Integrated Health Plan, Inc.*, No. 06-CV-00215-DRH, 2006 WL 3420289, at *3 (S.D. Ill. Nov. 28, 2006). Moreover, documentary evidence is readily transferable and transporting it generally does not pose a high burden upon either party. *First Nat'l Bank*, 447 F. Supp. 2d at 912; *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 836 (N.D. Ill. 2004).

The defendants argue that an overwhelming number of documents relevant to the issues in this case are stored in Florida and that access to these documents will be easier if this case is litigated there. (Mot. Transfer 10.) Plaintiffs argue that these documents are easily shipped to Illinois and the relevant workers' compensation claim files exist not only in Florida but are also stored in offices in other states. (Pls.' Resp. 5-6; *id.*, Ex. 13, CNA Designated Claim Handling Teams; *id.*, Ex. 13B, Parker Aff. ¶¶ 7-8.) The Court holds that any document necessary to the case may be easily shipped from one state to another. Accordingly, this factor weighs neither for nor against transfer.

### 4. Convenience of the Parties

When analyzing the convenience of the parties, a court considers "their respective residences and abilities to bear the expense of trial in a particular forum." *Von Holdt v. Husky*

9

*Injection Molding Sys. Ltd.,* 887 F. Supp. 185, 188 (N.D. Ill. 1995). It must be shown that the original forum is inconvenient for the defendant and that the alternative forum does not significantly inconvenience the plaintiff. *Emhart Indus., Inc. v. Universal Instruments Corp.*, No. 88 C 4960, 1988 WL 121538, at *2 (N.D. Ill. Nov. 4, 1988).

Plaintiffs are located in Illinois and defendants are, for the most part, located in Florida. (Compl. ¶¶ 2-20.) Defendants argue that plaintiffs will not be inconvenienced by a transfer because plaintiffs have already initiated a similar suit in the Middle District of Florida, have an office in Maitland, Florida and possess the ability to bear the costs of litigation there. (Mot. Transfer 11.) On the other hand, defendants claim they will be greatly inconvenienced if required to litigate in Illinois due to large number of pivotal witnesses who reside in Florida. (*Id.*) However, the SCI corporations have an office in Illinois, litigated in this district and participated in arbitration here related to this suit. (Pls.' Resp. 6 n.7.)

It appears that either side can bear the expense of trial in either location. Accordingly, this factor weighs neither for nor against transfer.

### 5. Convenience of Witnesses

The convenience of witnesses is generally viewed as the most important factor when considering a transfer of venue. *Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998). Convenience of non-party witnesses is "substantially more important than the convenience of party witnesses because the latter are within the party's control." *First Horizon Pharm. Corp. v. Breckenridge Pharm., Inc.,* No. 04 C 2728, 2004 WL 1921059, at *4 (N.D. Ill. July 21, 2004). Hence, non-party witnesses are more crucial to the analysis because they are not assumed to appear in court voluntarily. *Spherion Corp. v. Cincinnati Fin. Corp.,* 183 F. Supp. 2d 1052,

1059 (N.D. Ill. 2002); *Hyatt Corp.*, 2004 WL 2931288, at *3. "It is preferable to hold a trial in the forum that will necessitate less travel for witnesses." *Hinc*, 231 F. Supp. 2d at 795.

The SCI corporations have identified seven witnesses, five of whom are non-party witnesses and specified the content or relevance of their testimony. (Mot. Transfer 8-9; *id.*, Ex. A, Sullivan Aff. ¶¶ 6-13.) All seven of the witnesses reside in the Middle District of Florida. (Mot. Transfer 8-9; *id.*, Ex. A, Sullivan Aff. ¶¶ 7-11.) Further, the individuals with knowledge of workers' compensation files are CNA adjusters and legal counsel who worked and likely reside near their Maitland, Florida office. (Mot. Transfer 9; *id.*, Ex. E, Johns Aff. ¶¶ 6-7.) Defendants further argue that no single witness has been deposed by either party in this district and that numerous depositions have taken place or are scheduled to take place in the Middle District of Florida. (Mot. Transfer 9-10.)

Plaintiffs argue that all of the non-party witnesses that defendants identified are former employees of defendants, some of whom are willing to testify voluntarily. (Pls.' Resp. 8; *id.*, Ex. 17, Dep. of Timothy Christie at 30-31.) Regardless, the witnesses identified are non-party witnesses and most of them have not agreed to testify in the Northern District of Illinois. (Mot. Transfer 8-9; *id.*, Ex. A, Sullivan Aff. ¶¶ 6-13; *id.*, Ex. F, Email from Gorenberg to McIntyre of 7/23/07; *id.*, Ex. E, Johns Aff. ¶¶ 6-7.) Plaintiffs did not offer any names of non-party witnesses and thus have failed to meet their burden in establishing that the convenience of the non-party witnesses would be furthered by litigating in this venue. Because it is abundantly clear that most of the non-party witnesses specified thus far reside in the Middle District of Florida, this factor weighs heavily in favor of transfer.

### D. Public Interests

Interests of justice include the court's familiarity with the applicable law, the speed at which the case will proceed to trial and the desirability of resolving controversies in their locale. *First Nat'l Bank,* 447 F. Supp. 2d at 912; *Medi USA v. Jobst Inst., Inc.,* 791 F. Supp. 208, 210 (N.D. Ill. 1992). "In determining whether a motion under § 1404(a) should be granted, the court must seek to promote the efficient administration of justice and not merely the private interests of the parties." *Hanley,* 6 F. Supp. 2d at 774.

Furthermore, outside of the traditional public interest factors, a district court has an interest in efficiency and avoiding the possibility of multiplicity of litigation. *Galileo Int'l P'ship v. Global Vill. Commc'n, Inc.*, No. 96 C 3554, 1996 WL 452273, at *5 (N.D. Ill. Aug. 8, 1996) (considering that denial of motion to transfer may result in duplicative litigation); *see Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Stanley*, 606 F. Supp. 558, 563-64 (N.D. Ill. 1985) (discussing two pending actions, but focusing on the importance of the court's consideration of counterclaims to avoid duplicative actions). Complicated issues of personal jurisdiction, which can potentially bifurcate an action, can be avoided by transferring to a more appropriate venue where there are no such issues. *LIC Indus. v. MTSS Leasing Inc.*, No. 86 C 1585, 1986 WL 11385, at *1 (N.D. Ill. Oct. 7, 1986); *see Merrill Iron & Steel, Inc. v. Yonkers Contracting Co.*, No. 05-C-104-S, 2005 WL 1181952, at *4 (W.D. Wis. May 18, 2005) ("Conservation of judicial resources and avoidance of unnecessary legal expenses are advanced by a transfer from a forum in which there is a genuine question of personal jurisdiction to a district in which there are no such uncertainties."). "Transfer rulings under 28 U.S.C. § 1404(a) generally turn on practical considerations, including judicial economy (whether transfer will avoid duplicative litigation, effect judicial economy and prevent waste of time and money)." *Dorado v. Laborers Pension*

*Trust Fund for N. Cal.*, No. CV F 06-0394 AWI LJO, 2006 WL 2402006, at *2 (E.D. Cal. Aug. 18, 2006) (citing *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964)).

In this case, six of the defendants have challenged the Court's personal jurisdiction over them. (Mot. Transfer 5-6, 13-20.) Because it appears likely that all defendants may be subject to personal jurisdiction in the Middle District of Florida, transferring the case there might obviate the personal jurisdiction inquiry. Therefore, this weighs in favor of transfer. *See, e.g. Merrill Iron & Steel*, No. 05-C-104-S, 2005 WL 1181952, at *4; *Circle Group Internet, Inc. v. Atlas, Pearlman, Trop & Borkson, P.A.*, No. 01 C 7338, 2002 WL 1559637, at *1 (N.D. Ill. July 16, 2002) ("[R]esolution of the venue issue will obviate the need to decide the personal jurisdiction issue, which is somewhat complicated because there are multiple defendants.").

**1. Applicable Law**

The Finance and Claims Services Agreements provide that Illinois law governs any disputes arising out of the Agreements. (Compl. ¶¶ 56, 60, 63, 66; Pls.' Resp. 9; *id.*, Exs. 1-4, 2001-2003 Claim Services Agreements; *id.*, Exs. 37-39, 2000-2002 Finance Agreements; Mot. Transfer, Ex. B, 2002 Claims Services Agreements.) However, as courts sitting in diversity are frequently called upon to interpret another state's laws, the balance is not altered greatly by the choice of law. *See Peterson v. U.S. Steel Corp.,* 624 F. Supp. 44, 46 (N.D. Ill. 1985). Hence, a change of venue under section 1404(a) should be "but a change of court rooms" without any prejudicial change in law. *See Van Dusen*, 376 U.S. at 639. Therefore, this factor weighs neither in favor of, nor against, transfer.

## 2. Expediency to Trial and Congestion of the Docket

The efficient administration of the court system is a factor included within the interests of justice. *Coffey*, 796 F.2d at 221. Judicial expediency and justice "may be served by a transfer to a district where the litigants are more likely to receive a speedy trial." *Id.*

The SCI corporations argue, and plaintiffs do not dispute, that cases proceed to trial faster in the Middle District of Florida than they do in the Northern District of Illinois: around ten months faster according to the 2007 Judicial Caseload Profile. (Mot. Transfer 7; *id.*, Ex. C, Judicial Caseload Profile for M.D. Fla.; *id.*, Ex. D, Judicial Caseload Profile for N.D. Ill.) Furthermore, the courts in this district have higher case loads than those in the Middle District of Florida. (*Id.* 8.) Because a longer path to trial does not serve the interests of justice, this factor weighs in favor of transfer.

## 3. Interest in Resolving the Controversy in Their Locale

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *First Nat'l Bank*, 447 F. Supp. 2d at 914 (quotation omitted). In this case, both Illinois and Florida have legitimate interests in redressing grievances by their residences regarding contract disputes and insurance coverage. (Pls.' Resp. 9.) Because the contract formation, performance, and applicability straddle Illinois and Florida, the interest of each state regarding the outcome of the litigation does not favor either forum.

In sum, after carefully addressing and reviewing each of the above factors, the Court finds that the Middle District of Florida is the most appropriate forum for the convenience of the parties, witnesses and the interests of justice. While all other factors are neutral, the convenience

of the non-party witnesses, the expediency to trial and the congestion of the docket weigh in favor of granting the motion to transfer. Accordingly, the Court transfers this case to the Middle District of Florida.

## Conclusion

For the reasons provided in this opinion, the Court grants the motion to transfer venue to the Middle District of Florida [doc. no. 147]. The Court hereby orders the Clerk of the Court to transfer this case to that venue. All other motions will be addressed by the transferee court.

**SO ORDERED.**                              **ENTERED: September 18, 2009**

**HON. RONALD A. GUZMAN**
**United States District Judge**